UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsd.uscourts.gov

**Case No. 9:15-cv-80119-KAM**

In re:                                                      Bankruptcy Case No. 09-36379-PGH
                                                            Chapter 11

Palm Beach Finance Partners, L.P. and
Palm Beach Finance II, L.P.,

      Debtor(s).

_____/

Barry E. Mukamal, as Liquidating Trustee,

      Plaintiff,

                                         L.T.[1] Adv. Case No. 11-02940-PGH

v.

The National Christian Charitable
Foundation, Inc., d/b/a The National
Christian Foundation, Inc.,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO MOTION FOR LEAVE TO APPEAL

Putative appellee, Barry E. Mukamal (the ***"Plaintiff"*** or the ***"Respondent"***), in his

capacity as Liquidating Trustee for the Palm Beach Finance Partners Liquidating Trust and the

Palm Beach Finance II Liquidating Trust (collectively the ***"Liquidating Trusts"***), responds in

opposition to the The National Christian Charitable Foundation, Inc.'s (the ***"Defendant"*** or the

***"Movant"***) Motion for Leave to Appeal [ECF No. 1] (the ***"Motion"***) the *Order on Competing*

*Motions for Summary Judgment as to Which State's Law Applies to Fraudulent Transfer Claim*

[ECF No. 1, Exhibit A] (the ***"Order"***), and states as follows:

---

[1] ECF citations to the record in this proceeding are denominated as [ECF No. ___]. ECF citations to the adversary
proceeding below are denominated as [L.T. ECF No. ____]

## PRELIMINARY STATEMENT

The Motion comes before the Court following the Bankruptcy Court's resolution of competing summary judgment motions as to the issue of which state's version of the Uniform Fraudulent Transfer Act (*"UFTA"*)[2] applies to Plaintiff's action against the Defendant.  The Plaintiff asserted that the applicable law is either Georgia or Florida (the domicile of the parties), while the Defendant sought application, not of its own state's law, but that of a jurisdiction in which neither party is, or ever was, a domiciliary.  Defendant did so because, following the commencement of the litigation, the foreign jurisdiction (Minnesota) retroactively amended its version of the UFTA to exclude certain transfers to qualified charities from the definition of "transfer" (the "*Minnesota's Charitable Contribution Exception*"), and Defendant is attempting to avail itself of that possible exception (not available to it under either Georgia or Florida law).  Defendant's efforts at law shopping to improve its position in the litigation for a potentially better result were rejected by the Bankruptcy Court under the applicable legal standard and similarly, for the reasons detailed herein, do not form a proper basis for an interlocutory appeal to this Court.

## RESPONSE

"It is for good reason that appeals may normally be taken only from final judgments. The final judgment rule has been at the core of federal appellate jurisdiction for two centuries." *Terry v. June*, 368 F. Supp. 2d 538, 540 (W.D. Va. 2005). "District courts and bankruptcy appellate panels, in determining whether leave will be granted to appeal from an interlocutory order, generally have relied on the standard set forth in 28 U.S.C. § 1292(b) governing appeals of

---

[2] The UFTA has been enacted in 43 states and the District of Columbia, and is practically substantively identical. *See* Andrew F. Dana and John D. Price, *Understanding and Addressing the Risk of Clawbacks*, 25 RIA Taxation of Exempts 3, 13 n.6. The a retroactive amendment to Minnesota's version of the UFTA concerning charitable contributions is the impetus for the choice of law dispute in this case.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

interlocutory district court orders to the court of appeals."  6–117 Collier Bankruptcy Practice

Guide P 117.04.  The Eleventh Circuit has emphasized the limited scope of § 1292(b):

> The appeal from interlocutory orders thus provided should and will
> be used only in exceptional cases where a decision of the appeal
> may avoid protracted and expensive litigation, ... where a question
> which would be dispositive of the litigation is raised and there is
> serious doubt as to how it should be decided. . . . It is not thought
> that district judges would grant the certificate in ordinary litigation
> which could otherwise be promptly disposed of or that mere
> question as to the correctness of the ruling would prompt the
> granting of the certificate.

*McFarlin v. Conseco Servs*., 381 F.3d 1251, 1257 (11th Cir.2004).  Simply stated, this is not the

exceptional case for which interlocutory review is appropriate.

The Movant favorably cites Judge Gold's opinion in *Colonial Bank v. Freeman (In re*

*Pac. Forest Products Corp.)*, 335 B.R. 910 (S.D. Fla. 2005), as the authoritative discussion of

the standards under which a district court grants leave to appeal an interlocutory order under 28

U.S.C. § 157(a)(3).  The Respondent absolutely agrees. The reasoned analysis in *Colonial Bank*

illustrates the elements which must *all* be present if the Court is to grant leave to appeal:  "a

district court may grant interlocutory review of a bankruptcy order if the subject issue

(1) involves a controlling question of law, (2) as to which there is a substantial ground for

difference of opinion, and (3) is such that an immediate appeal would advance the ultimate

termination of the litigation." *Id.* at 919.  The Movant, however, clearly fails to meet that

standard.

### A.  The Movant Cannot Show Substantial Grounds for Difference of Opinion

To satisfy this element, the Movant must normally demonstrate that at least two courts

interpret the relevant legal principle differently.  *Id.  (citing Auto Dealers Group v. Auto Dealer*

*Servs., Inc. (In re Auto Dealer Servs., Inc.), 81 B.R. 94, 97 (M.D. Fla. 1987)).*  As stated by

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

Judge Gold in *Colonial Bank*, "[i]t is simply not enough for interlocutory review that the order for which appeal is sought presents a difficult ruling; nor is it sufficient that the movant can demonstrate a lack of authority on the issue." *Id.* (*citations omitted).* Moreover, "where there is controlling authority in the jurisdiction where the order was rendered, there cannot be a substantial difference of opinion." *Id.* (*citing In re Managed Care Litig.,* Nos. MDL 1334,00-1334MDMORENO, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002)).   Here, the Motion fails under each of these directives.

The Bankruptcy Court's opinion held that Minnesota law would not apply on *two separate and independent grounds*: (1) there was a false conflict because Minnesota had no interest in the proceeding; and (2) even if there was a conflict, Georgia had the most significant relationship to the proceeding under Florida choice of law rules. *Order,* at 17-18, 26-27.   As to the first ruling (false conflict), the Bankruptcy Court's determination was based on controlling authority in this district.   Specifically, Florida law is settled as to the existence of a 'false conflict' "(1) where the laws of the different sovereigns are the same; (2) where the laws of the different sovereigns are different but would produce the same outcome under the facts of the case; or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Miller v. Thrifty Rent-A-Car Sys., I*nc., 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009); *Tune v. Philip Morris Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000). *Hoffman v. Ouellette*, 798 So. 2d 42, 46 (Fla. 4th DCA 2001); *Hoy v. Sandals Resorts Int'l, Ltd.*, No. 11-24580-CIV, 2013 WL 6385019, at *3 (S.D. Fla. Dec. 6, 2013).   Moreover, binding Eleventh Circuit precedent (followed by the Bankruptcy Court) holds that a state's interests will not be furthered (the third type of false

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

conflict) by application of a "loss distribution rule"[3] to a defendant that is not a citizen of that state.  *Order*, p. 13.  After finding that the Minnesota's Charitable Contribution Exception is an example of what the Eleventh Circuit has characterized as a "loss distribution rule" (which the Defendant does not contest anywhere in its Motion), the Bankruptcy Court applied binding Eleventh Circuit precedent[4] and found that, because the Defendant was not a citizen of Minnesota, Minnesota had no interest in applying its policy of limiting the fraudulent transfer liability of certain defendants.  *Order*, pp. 13-14.  Accordingly, the Bankruptcy Court's ruling that any conflict with Minnesota law was a false conflict was clearly based on binding precedent in this district and, accordingly, there cannot be a "substantial difference of opinion" as required under the standard enumerated in *Colonial Bank*.

As to the second ruling (Georgia has the most significant relationship),[5] the Movant also cannot demonstrate a substantial ground for difference of opinion because this is a case of first impression in that regard.  As stated by Judge Gold in *Colonial Bank*, it is not

> sufficient that the movant can demonstrate a lack of authority on the issue. . . An issue of first impression is insufficient to establish that there are substantial grounds for difference of opinion[].

*Colonial Bank*, 335 B.R. at 922 (internal citations and quotations omitted).  That is exactly the posture here.  As the Bankruptcy Court recognized, there is no case law on point.[6]  Specifically, *no other case* has considered application of the significant relationship test in a fraudulent

---

[3]  As detailed by the Bankruptcy Court, "'[l]oss distribution' rules, as opposed to 'conduct regulation' rules," 'prescribe how liability is to be apportioned in a legal action, such as a limitation on damages.'" *Order*, p. 13 (citations omitted).  "'Conduct regulation' rules, "prescribe substantive standards for people to observe, such as a 'rule of the road.'  In contrast to 'loss distribution' rules, a state's interest in applying a 'conduct regulation' rule will 'usually be triggered whenever the regulated conduct or the injury occurs in the state.'" *Id.*, at  n. 9 (citations omitted).

[4]  *Order*, at p. 11 (*citing Foster v. United States*, 768 F.2d 1278, 1283 (11th Cir.1985) ("[A] limit on recovery should not be applied when there is no domiciliary defendant because it advances no policy behind the limitation.")).

[5]  The Florida conflict-of-law rules require the application of a 'most significant relationship test.  *See Bishop v. Fla. Specialty Point Co.*, 389 So. 2d  999 (Fla. 1980).

[6]  *Order*, p. 9.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

transfer action[7] brought by a *creditor* in one state against a transferee domiciled in a second

state, on account of a cash transfer made by a *non-party* transferor in a third state.  To that end,

the Bankruptcy Court considered a question of first impression, and ultimately decided, in a

careful and thoughtful opinion, that, under the facts at issues in this case, the law of the situs of

the Defendant (the transferee) should be applied to such a UFTA claim.  *Order*, pp. 18-27.

The Movant has failed to identify a single on-point case interpreting the legal principle

differently.  Instead, the Movant states only that:

> The Bankruptcy Court also acknowledged contrary authority cited
> by NCF. *Id.*at 16, discussing *Chapman v. DePuy Orthopedics, Inc.*
> Unfortunately, the Bankruptcy Court did not acknowledge or
> address the many other contrary authorities cited by NCF,
> including the Uniform Law Commission's choice of law
> amendment to the UFTA.  Ironically, the Bankruptcy Court relied
> heavily on *Janvey v. Alguire*, a case in which the court ultimately
> applied the law of the debtor/transferor's state.[8]

*Motion*, p. 11 (internal citations omitted).    However, neither *Chapman*, nor *Janvey*, nor any of

the Movant's 17 string-cited cases, interpret the legal principle at issue differently than the

Order.  As the Bankruptcy Court discussed, *Chapman v. DePuy Orthopedics, Inc.*, 760 F.Supp.

2d. 1310 (M.D. Fla. 2011) is simply inapposite.

> In *Chapman*, the court rejected a false conflict argument in the
> context of a products liability action resulting from a defective
> medical device and held that Virginia had a legitimate interest in
> the action even though neither the plaintiff nor the defendant was a
> Virginia resident. 760 F.Supp.2d at 1312-13. . . The analysis is
> simply too brief to be helpful here. Moreover, the Chapman case is
> factually distinguishable. In Chapman, the plaintiff and her doctors

---

[7] In its Order, the Bankruptcy Court acknowledges that there is a split of authority as to whether fraudulent transfers
sound in tort or in equity. *Order*, p. 9. The Court concluded that this action sounds in tort (and thus the most
significant relationship test applies).  *Id.* at pp. 9-11. The Movant has not suggested the Bankruptcy Court erred in
determining that a fraudulent transfer action sounds in tort, and even identified the most significant relationship test
as the appropriate test in the proceedings below.  *See Defendant's Motion for Summary Judgment and Memorandum
in Support* [L.T. ECF No. 70], a true and correct copy of which is attached hereto as Exhibit 1, p. 8.
[8] In two footnotes, the Movant also string cites 17 cases. Because a summary and citation of the cases is far too long
for a footnote, a brief summary of each case follows this brief as Exhibit 2.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

> were residents of Virginia at the time the medical device at issue
> was surgically implanted. *Id.* at 1312. Additionally, the plaintiff's
> "follow-up care occurred in Virginia . . . [e]ven after [she] moved
> to Florida," and upon detection of the plaintiff's injury, the
> plaintiff "[r]eturned immediately to Virginia to treat the injury." *Id.*
> at 1314. In fact, "[t]he only significant contact with Florida is that
> the injury manifested itself and was discovered in Florida" while
> the Defendant was a Florida resident. *Id.* The Chapman court's
> analysis would thus be instructive only if the facts here were
> different—for example, if the Debtors were residents of Minnesota
> at the time of the Transfers and only later relocated to Florida.
> Therefore, considering the brevity of Chapman's false conflict
> analysis and the factual dissimilarity of Chapman to the matter
> now before the Court, the Chapman opinion is unpersuasive.

*Order*, pp. 16-17.  It follows that the *Chapman* court did not "interpret the relevant legal principle differently," but instead applied the same legal principle to wholly different facts.

Similarly, the Movant suggests that the Bankruptcy Court's reliance on *Janvey v. Alguire*, 2013 WL 2451738, 2013 U.S. Dist. LEXIS 82568 (N.D. Tex. Jan. 22, 2013), may provide a substantial ground for difference of opinion, because it was "a case in which the court ultimately applied the law of the debtor/transferor's state." *Motion*, p. 11 (emphasis in original).  The Movant's innuendo is a red herring, however, because the *Janvey* court ultimately applied the law of the domiciliary of a party (the plaintiff), just as the Bankruptcy Court did here (as Georgia law is the domiciliary of NCF, a party).  *Janvey*, 2013 WL 2451738 at *5.  In this case, the transferor, Metro Gem, Inc., is not a party and therefore *Janvey* is inapposite.  Furthermore, the Bankruptcy Court cited to *Janvey* in the context of its false conflicts analysis, not in connection with its application of the significant relationships test.[9]  *Order*, p. 14.  As such, *Janvey* provides no grounds for difference of opinion.

---

[9] The *Janvey* court decided there was no conflict between the forum's (Texas) enactment of the UFTA, and the UFTA of the various states in which the Defendants resided. *Id.* Thus, the Court applied Texas law based on mandatory Fifth Circuit jurisprudence holding that the "law of the forum state applies when substantive state law does not conflict." *Id.* Indeed, if the Movant were arguing for the application of Florida law, *Janvey* might support its Motion (given its lack of conflict with Georgia law), but of course, that would not benefit the Movant.  In fact,

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

Likewise, none of the Movant's 17 cases (which are string-cited without any explanation or analysis) provide any grounds for difference of opinion.[10] None of the cases suggest the Bankruptcy Court's determination that Minnesota's Charitable Contribution Exception is a loss distribution rule is incorrect. None of the cases hold that a state has an interest in a loss distribution rule's extraterritorial application to a non-resident defendant. None of the cases hold that in a UFTA case brought by a creditor in one state against a transferee in a second state should be subject to the fraudulent transfer law of a third state in which the transferor, who is not a party, happens to be domiciled. None of the cases undermines the Bankruptcy Court's reasoning at all. Instead, they apply largely the same legal standard to a variety of different factual scenarios and come to a variety of conclusions based on the application of the law to those very different facts. That is not a substantial ground for difference of opinion.

Simply stated, the Movant has not met its burden to provide *a single case* which rejects the Bankruptcy Court's decision. For instance, in *Colonial Bank,* 335 B.R. at 913-14, the case on which the Movant chiefly relies, the trustee sued two banks to recover fraudulent transfers.

---

the analysis in *Janvey* actually supports the Bankruptcy Court's reasoning as to the existence of a false conflict and in no way provides any grounds for difference of opinion. The plaintiff in *Janvey* was the court-appointed receiver for R. Allen Stanford, his associates, and various entities under Stanford's control, which together operated a massive ponzi scheme. *Id.* at *1. The entities "operated as a single entity, headquartered in Houston, Texas," but the defendants (who were not residents of Antigua) purchased certificates of deposit from a Stanford affiliate located in Antigua, and the receiver sued to recover these purchases as fraudulent transfers. *Id.* at *4. The *Janvey* defendants argued, just as the Movant does here, that the situs of the transferor in *Janvey* (Antigua) was the proper focus. But the *Janvey* court, just as the Bankruptcy Court below, decided that Antigua had no interest in the proceeding, given that no party sought the protection of Antiguan law as a citizen of Antigua, and thus any conflict between Texas and Antiguan law was a 'false conflict.' *Id.*

[10] Of the 17 cases, eight are conventional torts, which are so factually dissimilar that they have no application here, but otherwise seem to support, rather than disagree with the Bankruptcy Court's Order. Of the nine fraudulent transfer cases, four cases chose the law of the state in which the Plaintiff was located, and four chose the state in which the Defendant or transferee was principally doing business. One case chose the situs of the fictional creditor body, as the cause of action was asserted under the Bankruptcy Code's empowerment of a bankruptcy trustee to sue for a fraudulent conveyance avoidable by an actual creditor under 11 U.S.C. § 544(b). Synthesizing the nine fraudulent transfer cases, they generally support the following principles: (1) courts resolve conflict of law disputes in fraudulent transfer actions in favor of fewer restrictions on avoidance because fraudulent transfer law chiefly protects creditors; (2) the situs of the transferee is afforded great weight; and (3) the weight afforded to the situs of the transferor is greater when the assets are tangible (such as inventory) than when they are intangible (such as a guaranty). *See* Exhibit 2.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

The trustee moved for partial summary judgment on whether the transfers at issue were made with the intent to hinder, delay, or defraud. *Id.* at 914. In granting summary judgment, the Bankruptcy Court ruled that the operator of a check-kiting scheme acts *per se* with the intent to hinder, delay, or defraud <u>creditors</u>. *Id.* at 920. In moving for leave to appeal, the banks cited a case which specifically rejected that conclusion. *Id.* at 923-24 ("The court rejected the trustee's argument, reasoning that while the debtor's guilty plea may have stood as prima facie evidence of the debtor's intent to defraud the banks being used for the kiting, it had no bearing on the analysis of whether the kiting was intended to defraud the debtor's other creditors.").

In order to grant leave to appeal, the *Colonial Bank* court required at least one case which was on point and which decided the same issue – *i.e.* whether a check-kiting scheme is *per se* actual fraud as to <u>creditors</u>.   Here, the Movant string-cites many cases without analysis, hoping what the cases lack in substance and applicability is overcome by volume.   None are applicable.[11] "Simply because plaintiff would interpret the applicable law differently does not establish a 'substantial ground for difference of opinion.'"  *In re Auto Dealer Servs., Inc.*, 81 B.R. 94, 97 (M.D. Fla. 1987); *see also  Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 825 (S.D. Fla. 2007) ("these cases are inapposite because they are not related to the legal issue that is the subject of this appeal. . . Because Appellant has failed to demonstrate that at least two courts interpret this legal principle differently, the second element is not [met].").   Accordingly, the Motion should be denied.

---

[11] The Motion also references the Uniform Voidable Transactions Act, a model act which has not been adopted in Florida, Georgia, or Minnesota, or for that matter, any other state, other than Kentucky. *See* Kentucky, S.B. 204 (2015).  Since model laws are not authoritative unless enacted, and because the requirement is to provide a contrary *case*, this Court should ignore the Uniform Voidable Transactions Act, just as the Bankruptcy Court did below.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

### B.  The Order Below Does Not Concern a Controlling Issue of Pure Law

In order to succeed on the Motion, the Movant must also demonstrate that the order appealed from involves a controlling question of law. *Colonial Bank*, 335 B.R. at 919. "To satisfy this portion of the standard, the movant must demonstrate that there is a question of *law*, and it is *controlling*." *Id.* (emphasis in original).  The Movant fails to satisfy either prong of this element of the test.

As described by the court in *Colonial Bank,* "an issue meets this exacting standard if it deals with a question of `pure' law, or matters that can be decided `quickly and cleanly without having to study the record.'" *Id. (citing McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1258, 60-62 (11th Cir. 2004) (finding that because the issues presented involved application of the facts to the law, the movant could not prove a "controlling question of law") (additional citations omitted).   In fact, "[t]he antithesis of a proper [interlocutory] appeal is one that turns on whether . . . the district court properly applied settled law to the facts." *Id. (citing McFarlin*, 381 F.3d at 1259).

As outlined above, however, that is precisely what the Movant has asked this Court to do here.  Florida's application of the 'significant relationships' factors set forth in the Restatement is well-settled law.  *See Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1567 (11th Cir. 1990) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980)).  Moreover, Florida law on false conflicts is settled, as is the controlling precedent in the Eleventh Circuit with respect to the inapplicability of a 'loss distribution' rule, like Minnesota's Charitable Contribution Exception, to non-domicialiaries.  *See supra*, p. 4-5.

The Movant seeks on interlocutory review a re-application of that well-settled law *to these facts.*  That is, the Movant asks this Court to re-apply the Restatement factors to the facts of

record in this case.  But that is the very type of question the Eleventh Circuit has called the "antithesis" of interlocutory review.  Accordingly, because the Movant does not seek review of a question of 'pure law,' the Motion should be denied.

Similarly, the issues to be presented on appeal are not "controlling."  A "question is not controlling merely because it is determinative of the case at hand, but is controlling only if it may contribute to the determination, at an early stage, of a wide spectrum of cases." *Auto Dealer*, 81 B.R. at 96.  A "controlling question is one that rises from the details of the case to a place of relevance among similar cases." *Aurelius Capital Master, Ltd. v. Tousa Inc.*, No. 08-61317-CIV, 2009 WL 6453077, at *14 (S.D. Fla. Feb. 6, 2009).  It is axiomatic that because the choice of law analysis necessarily requires the weighing of the relative interests of several states in any proceeding, every case will require an independent factual analysis.  Re-weighing such interests here would certainly concern the "details of the case," but such would fail not only to conclusively resolve this litigation,[12] it would fail to rise to any "place of relevance among similar cases" because the facts will *always* be different.  It follows that hearing this piecemeal appeal may resolve exactly one issue in exactly one case.  Accordingly, because there is no controlling issue of pure law, the Motion should be denied.

### C.  An Immediate Appeal Would Not Advance the Termination of the Litigation

Finally, it is the Movant's burden to demonstrate that an immediate appeal would advance the ultimate termination of the litigation.  *Colonial Bank*, 335 B.R. at 910.  This element is met "where resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259.

---

[12] The Defendant here participated knowingly and willingly in a series of transactions for the purpose, and with the express intention, of assisting others in their efforts to circumvent IRS regulations.  It did so *at all times* from Georgia and in a manner that, even it acknowledges, was improper.  Under these circumstances, even if Minnesota law were to apply, the Plaintiff disputes that the transfers at issue herein fall under Minnesota's Charitable Contribution Exception.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

In an analogous UFTA case, *Terry v. June*, 368 F. Supp. 2d 538, 539 (W.D. Va. 2005), the District Court denied certification of an interlocutory appeal as to a choice of law issue for reasons that are equally applicable here.  The court in *Terry* recognized that one could "speculate that an interlocutory appeal would be the more efficient course." *Id.*  However, the *Terry* court noted that "such an appeal could well delay a final decision." *Id.* The *Terry* court considered arguments strikingly similar to those made by the Movant, but decided that an interlocutory appeal would delay disposition of the case, and denied certification:

> The defendant argues that the Receiver has filed multiple related cases in this court, making it even more important that the choice-of-law issue be decided on an interlocutory basis. It is quite unlikely, however, that an appellate decision on this issue will be necessary in all these cases. Indeed, several related cases brought by the Receiver have already been resolved without a determination of the choice-of-law question, let alone an appeal. It is simply unknown whether this case, or any of the related cases, will ever be appealed to the Court of Appeals. There are any number of reasons why the defendant here—and the defendants in the other cases—would not appeal the court's choice of law following a final order, including settlement of the claims, a victory by the defendant, or a determination that a reversal on the choice of law would not change the outcome. In short, the court finds that certification for interlocutory appeal would be more likely to delay resolution of this case than to advance it.

*Id.* at 539-540.

Here, while the Plaintiff did in fact commence a myriad of UFTA actions in its capacity as a creditor in the context of the above-captioned bankruptcy proceedings, most have already been resolved without significant litigation.  *See* Exhibit 3.  Moreover, the instant case is the only such UFTA action remaining against a non-investor in the *Ponzi* scheme, and thus, a resolution of the choice of law issue in this case involves facts unique to this particular action.  As such, interlocutory review will not resolve a controlling legal question that will substantially shorten this or any other pending litigation.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

Instead, applying Minnesota law would only serve to create additional litigable issues -- namely, whether or not the Movant is entitled to the protections of Minnesota's Charitable Contribution Exception (which the Plaintiff disputes), all while the parties still prepare for and litigate not only the Plaintiff/Respondent's *prima facie* case, but the Defendant/Movant's 22 affirmative defenses.[13] And because Minnesota's Charitable Contribution Exception was only recently enacted, and no cases have yet interpreted or applied it, let alone considered it in the context of facts such as those presented in the instant case, disputes as to its interpretation and application herein will likely lead to further piecemeal appeals, further delaying an ultimate resolution.

In sum, the Movant's attempted interlocutory appeal of the Order at this stage in the litigation will not advance the ultimate termination of litigation.  Accordingly, this Court should deny the Motion. The prompt resolution of this case is best served by permitting the case to be tried on the merits, and affording all litigants the opportunity for a single appeal upon the entry of a final order.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

---

[13] *See Answer and Affirmative Defenses* [L.T. ECF No. 29], a true and correct copy of which is attached hereto as Exhibit 4.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

## CONCLUSION

The Movant has attempted to paint the Order as a decision well-suited for interlocutory review.  However, the Eleventh Circuit has made it clear that the consideration on appeal of non-final orders such as this are the antithesis of the interlocutory appeal process.  The Movant asks this Court to re-apply well-settled law to the facts of this case, without citing any cases which urge a different result.  In cases such as this, interlocutory review is more likely to delay, rather than advance the litigation, and will have no material effect on any other cases.  For these reasons, this Court should deny the Motion.

Dated: April 20, 2015.

s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
Jessica L. Wasserstrom, Esquire
Florida Bar No. 985820
jwasserstrom@melandrussin.com
Lawrence E. Pecan, Esquire
Florida Bar No. 99086
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for the Respondent*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing is being delivered to the following parties via transmission of Notices of Electronic Filing on April 20, 2015.

/s/ Peter D. Russin
Peter D. Russin, Esquire

**Bradley Scott Shraiberg, Esq.**
Shraiberg, Ferrara & Landau, PA
2385 NW Executive Center Drive
Suite 300
Boca Raton, FL 33431
Telephone: 561-443-0801 - Fax: 561-998-0047
Email: bshraiberg@sfl-pa.com

**<u>VIA UNITED STATES MAIL</u>**
**David J. Myers, Esq.**
FISHERBROYLES, LLC
1200 Abernathy Road
Building 600, Suite 1700
Atlanta, GA 30328
Telephone: 404-825-397 – Fax: 770-551-8105
Email: myers@fsblegal.com

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/MGEM/MGEM-28/01600604.DOCX.}

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                          Case No. 09-36379-PGH
                                                Chapter 11
Palm Beach Finance Partners, L.P. and
Palm Beach Finance II, L.P.,

      Debtor(s).
_____/

Barry E. Mukamal, as Liquidating Trustee,

      Plaintiff,

                                    Adversary Pro. No. 11-02940-PGH

v.

The National Christian Foundation, Inc.,

      Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

There are no genuine issues of material fact regarding the choice of law determination in this adversary proceeding, and NCF is entitled to judgment as a matter of law that Minnesota law applies under Florida's "significant relationship" test.

Applying Minnesota law, specifically the 2012 charitable contribution amendment to Minnesota's Fraudulent Transfer Act, there are no genuine issues of material fact and NCF is entitled to judgment as a matter of law that the Trustee's claims against NCF are time barred.

EXHIBIT 1

# FACTUAL BACKGROUND[1]

## The National Christian Foundation and Its Work

NCF, founded in Atlanta in 1982, is a tax exempt public foundation. As a public foundation, NCF receives contributions from donors and in turn distributes grants to other charities.[2]  In NCF's case, its grant recipients are primarily Christian organizations whose missions NCF has determined are not antithetical to the Christian faith.

NCF typically has distributed in grants to other charities all but 1.5% of the contributions NCF receives from its donors.  This includes 2005 and 2006, when the transactions at issue in this case occurred.

As a practical matter, if the Trustee "recovers" from NCF the $9,010,000 he seeks, NCF will have to pay that "recovery" with funds that NCF would otherwise be distributing as grants for charitable work.

## Donor Advised Funds at NCF

A donor to NCF may establish a Donor Advised Fund ("DAF") at NCF (also known internally as an NCF Giving Fund) and then may recommend grants to appropriate charitable organizations from the DAF/Giving Fund.   NCF normally owns and exercises complete dominion and control of all contributions, and a donor's recommendations for grants from a DAF/Giving Fund are subject to NCF's approval.

A donor establishes a DAF/Giving Fund at NCF by submitting an NCF Giving Fund Application and an initial contribution, which NCF evaluates and either accepts or rejects.  When the DAF/Giving Fund is established, the donor becomes an advisor to that fund and has the

---

[1]     NCF's separately filed Statement of Material Facts in Support of Defendant's Motion for
[2]     NCF is a public foundation (rather than a private foundation) because no single donor contributes more than one-third of NCF's total contributions received over a rolling five-year period.

option to name additional fund advisors.  Contributions to a DAF/Giving Fund normally are invested by NCF pending distributions recommended by the fund advisors and approved by NCF.

When the fund advisor has a recommendation for a grant from a DAF/Giving Fund, the fund advisor submits a grant recommendation to NCF.  NCF then conducts a due diligence review of the recommended grant, including the recipient organization (for example, to verify the organization's tax exempt status and mission), the amount, and the purpose of the grant.  In many cases (including here), the recipient organization has already been approved by NCF, either because the organization has been the recipient of previous grants from NCF or because the recipient organization itself has established a DAF/Giving Fund with NCF.

If a donor's grant recommendation is not approved for some reason, NCF will notify the fund advisor and will give the fund advisor the opportunity to revise the recommendation.

If the grant recommendation is approved, the grant amount is distributed to the approved charity by check or wire transfer from NCF.

**Fidelis Foundation Established a DAF/Giving Fund with NCF**

Fidelis Foundation is a tax exempt public foundation, incorporated in and at all relevant times located in Minnesota.  In March 2005, Fidelis Foundation opened the Fidelis Foundation Giving Fund at NCF with an initial contribution of $400,000.  Thereafter, NCF sent quarterly reports regarding The Fidelis Foundation Fund to Fidelis Foundation in Minnesota.

In April 2005 Fidelis Foundation personnel visited NCF's offices in Atlanta.  The Fidelis Foundation representatives asked that NCF receive the next major gift from Fidelis Foundation's primary donor (Frank Vennes), through a DAF/Giving Fund to be set up by that donor, and then distribute the gift to Fidelis Foundation on the donor's recommendation.  The transaction was

expected to occur by September 30, Fidelis Foundation's fiscal year end, or by the end of the calendar year.

In June 2005 NCF notified Fidelis Foundation that NCF had "approved the Fidelis Foundation as a pre-approved ministry, which means that you can make distributions out of your FF Giving Fund here at NCF back into you[r] Foundation whenever you desire."

**Frank Vennes Established a DAF/Giving Fund at NCF and Made Four Contributions to Fidelis Foundation Through NCF ("the Transfers")**

On December 30, 2005, Vennes established a DAF/Giving Fund with NCF – known as The Vennes Charitable Fund – with a $4 million contribution.  The $4 million check was drawn on Metro Gem's account at a Minnesota bank.  Metro Gem was incorporated in Minnesota and at all relevant times was located in Minnesota.

Less than a week later, on January 6, 2006, NCF wired a $3,985,000 grant (the $4 million contribution by Vennes minus a $15,000 fee to NCF for the expedited grant request) to Fidelis Foundation's bank in Minnesota.

Thereafter, NCF sent quarterly reports and all other written communications regarding The Vennes Charitable Fund to Vennes and his attorney (who was also Fidelis Foundation's attorney) at the addresses they provided in Minnesota.  Other written communications from Vennes's attorney regarding The Vennes Charitable Fund were sent to NCF from Minnesota.

On September 27, 2006, NCF received a $610,000 contribution to The Vennes Charitable Fund via wire transfer from Metro Gem's bank account in Minnesota.  The next day, NCF wired a $600,000 grant ($610,000 minus a $10,000 fee for the expedited grant request) to Fidelis Foundation's bank account in Minnesota.

On October 2, 2006, NCF received a $400,000 contribution to The Vennes Charitable Fund via wire transfer from Metro Gem's bank account in Minnesota. The next day, NCF wired a grant of $400,000 to Fidelis Foundation's bank account in Minnesota.

On December 19, 2006, NCF received a $4 million contribution to The Vennes Charitable Fund via wire transfer from Metro Gem's bank account in Minnesota. The next day, NCF wired a $4 million grant to Fidelis Foundation's bank account in Minnesota.

In summary:

- Fidelis Foundation and all of its personnel who were involved in the set-up of the Fidelis Foundation Fund at NCF were in Minnesota;

- Vennes, Metro Gem, Vennes's law firm, and all of their personnel who were involved in the set-up of The Vennes Charitable Fund at NCF were in Minnesota;

- All actions taken by personnel of Vennes, Metro Gem, and Vennes's law firm with respect to the processing of the Transfers occurred in Minnesota;

- Each of the four Transfers to NCF was from Metro Gem's bank in Minnesota;

- Each of NCF's four grants to Fidelis Foundation was received into a bank account maintained by Fidelis Foundation in Minnesota; and

- All actions taken by Fidelis Foundation personnel with respect to the processing of NCF's four grants to Fidelis Foundation occurred in Minnesota.

**The Fidelis Foundation Grantees Were Primarily in Minnesota**

After receiving the funds involved in the Transfers via grants from NCF (as directed by Vennes), Fidelis Foundation used the funds to make grants to 20 charities. At least 11 of those charities were in Minnesota; the others were scattered among North Dakota (three charities), Illinois (two charities), and single charities in Georgia, New York, and Washington, D.C. (The

Trustee sued all 20 of Fidelis Foundation's recipients as well. *Mukamal v. CitySites Urban Media, Inc.*, Case 11-03022-PGH Doc. 2 (Amended Complaint) ¶¶ 52-55 and Schedules 1-19.)

**Criminal Prosecutions of Vennes, Harrold, and Prevost in Minnesota**

Vennes was prosecuted in the United States District Court for the District of Minnesota for his role in the Petters Fraud. On February 7, 2013, Vennes pled guilty to one count of aiding and abetting securities fraud and one count of money laundering. The specific money laundering violation admitted by Vennes was an August 2008 check payable to Countrywide Home Loans for a mortgage payment on Vennes's personal residence in Minnesota.

Likewise, the principals of the Palm Beach Funds, David Harrold and Bruce Prevost, were prosecuted and pled guilty to multiple counts of securities fraud in the Minnesota federal court. Throughout the Palm Beach Funds' involvement in the Petters Fraud, all communications between the Palm Beach Funds and Petters or PCI and all transaction documentation went through Vennes – a total of approximately 2,100 investment transactions investing approximately $8 billion in PCI notes.

**Choice of Law Provision in the PBF Transactional Documents**

The 2,100 investment transactions between the Palm Beach Funds and Petters/PCI were documented with Promissory Notes and Security Agreements – all of which contained choice of law provisions designating Minnesota law as their governing law.

**APPROPRIATENESS OF SUMMARY JUDGMENT ON CHOICE OF LAW**

The parties have agreed that the facts relevant to a resolution of the choice of law issue have been established, that a determination now as to which state's fraudulent transfer law applies will aid the parties and the Court in narrowing the issues for trial, and that it is in their collective best interests for the Court to resolve the choice of law issue at this stage of the case.

*See* Agreed *Ex Parte* Motion (I) for Leave of Court to File Cross-Motions for Summary

Judgment on Choice of Law and (II) to Amend Scheduling Order (Doc. 38) ¶¶ 2-3.

## SUMMARY JUDGMENT STANDARD

This Court recently set out the legal standard applied to a motion for summary judgment

in *Pride Family Brands, Inc. v. Carl's Patio, Inc.*, 2014 U.S. Dist. LEXIS 11799 (S.D. Fla. Jan.

30, 2014):

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

*Id.* at *9 (granting summary judgment).

In this case, the parties agree that the facts material to the choice of law determination are

undisputed. The Court is therefore in a position to apply Florida's choice of law rules to the

undisputed facts and, having done so, to grant summary judgment to NCF.

## ARGUMENT

**I.    UNDER FLORIDA CHOICE OF LAW RULES, MINNESOTA LAW APPLIES TO THE TRUSTEE'S CLAIMS AGAINST NCF.**

**A.    This Court Applies the Diversity Jurisdiction Approach to Determine Which Choice of Law Rules to Follow.**

This Court has already determined which of the various choice of law approaches the Court will follow.  Between the diversity jurisdiction approach, the uniform federal common law approach, and the hybrid approach, the Court follows the diversity jurisdiction approach to determine which choice of law rules apply.  *Mukamal v. Cosmos*, Adv. No. 11-02970-BKC-PGH-A Doc. 59 (July 30, 2013) at 22-23, 26-28.

Under the diversity jurisdiction approach, "[t]he Court will therefore apply the choice of law rules of the state of Florida if and when it engages in a choice of law analysis."  *Id.* at 28.

**B.    The Significant Relationship Test Determines Which State's Substantive Law Applies.**

This Court has also already determined that Florida's choice of law rules apply the "significant relationship test" to any choice of law issues regarding a statute of limitations, per *Bates v. Cook*, 509 So. 2d 1112 (Fla. 1987).  *Cosmos*, Doc. 59 (July 30, 2013) at 28, 24.

The Florida Supreme Court adopted the significant relationship test in *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980):

> [W]e now adopt the "significant relationships test" as set forth in the *Restatement (Second) of Conflict of Laws §§ 145-146* (1971):
>
> *§ 145*. The General Principle
>
> (1)      The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in *§ 6*.
>
> (2)      Contacts to be taken into account in applying the principles of *§ 6* to determine the law applicable to an issue include:

(a)     the place where the injury occurred,

(b)     the place where the conduct causing the injury occurred,

(c)     the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d)     the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Bishop*, 389 So. 2d at 1001.

Since *Bishop*, both the federal courts and the Florida courts have had occasion to describe and apply the significant relationship test. *See, e.g., Medlinger v. Bayer Corp. (In re Trasylol Prods. Liab. Litigation*), 2011 U.S. Dist. LEXIS 38012 at *139 (S.D. Fla. Jan. 18, 2011) ("Under the 'most significant relationship' test, the substantive law of the jurisdiction with the closest nexus to the claims applies"; applying the four *Restatement* contacts to determine that Oklahoma law applied to the products liability suit because the decedent's surgery happened in Oklahoma, the drug in question was administered to the decedent in Oklahoma, and the decedent lived and died in Oklahoma); *Butler University v. Bahssin*, 892 So. 2d 1087, 1091 n.2 (Fla. App. 2004) ("To determine which jurisdiction has the most significant relationship to the lawsuit and parties, a court considers where the injury occurred, where the events causing the injury occurred, the domicile of the parties, and where the parties' relationship is centered. *Restatement (Second) of Conflict of Laws* § 145-46 (1971) (cited in *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1114 (Fla. 1987))."). *See also Cosmos*, Doc. 59 at 25 (describing the relevant "significant relationship" factors as "the relationships of the parties with the particular states, the place of the injury, the place where the conduct causing the injury occurred, and the states' interests and policies in adjudicating these fraudulent transfer claims").

> **B.** **Minnesota Has the Most Significant Relationship to the Trustee's Claims Against NCF.**

Analyzing the four contacts identified in *Bishop* and the *Restatement*, as well as other significant contacts, the state with the most significant relationship to the Trustee's claims against NCF is Minnesota. It is therefore Minnesota's fraudulent transfer law that governs the Trustee's claims.

### 1. The Injury Occurred in Minnesota.

The injury alleged by the Trustee is the transfer of $9,010,000 (in four transactions in 2005 and 2006) from Vennes/Metro Gem to NCF – money that the Trustee contends should have been paid to (or otherwise kept available by Vennes/Metro Gem to be recovered by) the Palm Beach Funds.

The alleged injury occurred in Minnesota because:

- Vennes/Metro Gem and all their personnel associated with the Transfers, including Vennes's (and Fidelis Foundation's) attorney, were all in Minnesota.

- Immediately prior to the Transfers, the funds were in Vennes/Metro Gem's bank account in Minnesota.

- The Transfers were from Vennes/Metro Gem's bank account in Minnesota.

- Had the Transfers not occurred, the funds would have been in Vennes/Metro Gem's bank account in Minnesota.

- The Transfers were for the benefit of a Minnesota charity, Fidelis Foundation.

- The funds were returned (almost immediately) to Minnesota, to Fidelis Foundation's bank account in Minnesota.

- The funds were in Georgia only for as long as it took NCF to grant the funds to Fidelis Foundation. On the first occasion, NCF wired the funds to Fidelis Foundation

10

six days after receiving Vennes's contribution. On the second, third, and fourth occasions, NCF wired the funds to Fidelis Foundation the very next day after receiving Vennes's contributions.[3]

As far as the United States government was concerned, the injury occurred in Minnesota. When the United States determined to prosecute Vennes (and Petters and the principals of the Palm Beach Funds, Harrold and Prevost), it prosecuted them all in Minnesota – not in Georgia and not in Florida.

Likewise, when the Trustee filed adversary proceeding complaints against hundreds of Vennes/Metro Gem transferees located in many different states seeking to set aside hundreds of allegedly fraudulent transfers, the only state's fraudulent transfer law specifically pled by the Trustee was Minnesota's. *See* Complaint ¶¶ 33, 42, and Prayer for Relief (a). To the extent the Trustee now contends that the injury occurred somewhere other than in Minnesota, that contention is inconsistent with his initial pleading.

### 2. The Conduct Causing the Injury Occurred in Minnesota.

Just as the alleged injury itself occurred in Minnesota, the vast majority of the conduct causing the alleged injury also occurred in Minnesota.

- Vennes and Metro Gem, the transferors, were in Minnesota.

- The intended transferee of the funds – Fidelis Foundation – was in Minnesota.

- All Vennes/Metro Gem personnel associated with the Transfers, including Vennes's (and Fidelis Foundation's) attorney, were in Minnesota.

- All Fidelis Foundation personnel associated with the transfers were in Minnesota.

- Fidelis Foundation established its DAF/Giving Fund at NCF from Minnesota.

---

[3]   As noted earlier, NCF did retain a total of $25,000 in fees for expediting Vennes's requested grants to Fidelis Foundation.

- Vennes established his DAF/Giving Fund at NCF from Minnesota.

- The Transfers were decided on by Vennes/Metro Gem and Fidelis, authorized by Vennes/Metro Gem, and executed by Vennes/Metro Gem all in Minnesota.

- All correspondence to NCF regarding the Transfers – before, during, and after – was from Vennes/Metro Gem and Fidelis Foundation in Minnesota.

- The Transfers were from Vennes/Metro Gem's bank account in Minnesota.

- The funds were returned quickly to Minnesota, to Fidelis Foundation's bank account in Minnesota.

Thus, the vast majority of the conduct causing the alleged injury occurred in Minnesota.

### 3. Almost All of the Relevant Parties Were Located in Minnesota.

The parties with interests affected by this litigation include the Palm Beach Funds, Vennes, Metro Gem, NCF, Fidelis Foundation, and the recipients of Fidelis Foundation's grants. Only two of those parties were not in Minnesota, and even those parties' involvement included significant relationships with Minnesota.

The Palm Beach Funds.  The Palm Beach Funds were located in Florida.  However, the Palm Beach Funds had been participating in the Petters purchase money lending enterprise since 2002, always through Vennes and Metro Gem, operating out of Minnesota.  All of the thousands of transactional documents entered into by the Palm Beach Funds in those years went through Vennes/Metro Gem and designated Minnesota law as their governing law.  *See* Section 5(a) below.  The Palm Beach Funds' activities in and contacts with Minnesota were so extensive that the Palm Beach Funds' principals (Harrold and Prevost) were criminally prosecuted in Minnesota.

Vennes.  Vennes resided in and operated in and from Minnesota.

Metro Gem.  Metro Gem was incorporated and located in Minnesota.

NCF.  NCF was (and is) in Georgia.  However, its sole function was to receive funds from Minnesota and almost immediately to return those funds to Minnesota.  The fact that the funds ever left Minnesota was due merely to the happenstance that NCF is located in Georgia.

Fidelis Foundation.  Fidelis Foundation was incorporated and located in Minnesota.

Fidelis Foundation's Recipients.  The recipients of Fidelis Foundation's grants of the funds from the Transfers primarily were in Minnesota.  None were in Florida and only one was in Georgia, while three were in North Dakota and two were in Illinois.

Thus, almost all of the relevant parties were domiciled, incorporated, and so forth in Minnesota.

### 4. The Relationships Among the Involved Parties Were Centered in Minnesota.

There were two sets of relationships relevant to this adversary proceeding:  (1) the long-standing relationship between the Palm Beach Funds and Vennes/Metro Gem that is the basis for the Palm Beach Funds' claim to be creditors of Vennes/Metro Gem and (2) the briefer relationship among Vennes/Metro Gem, NCF, and Fidelis Foundation that encompassed the Transfers.  Both sets of relevant relationships were centered in Minnesota.

Palm Beach Funds and Vennes/Metro Gem.  The relationship between the Palm Beach Funds and Vennes/Metro Gem from 2002 through 2008 was centered in Minnesota, where Vennes/Metro Gem were located and from where Vennes/Metro Gem operated.  All communications between the Palm Beach Funds and Petters or PCI and all transaction documentation went through Vennes, including approximately 2,100 investment transactions investing approximately $8 billion in PCI notes.  Evidencing the Minnesota-centeredness of the

relationship, all of the documentation of those 2,100 investment transactions specified that Minnesota law applied to the transactions.

Vennes/Metro Gem, NCF, and Fidelis Foundation. The relationship among Vennes/Metro Gem, NCF, and Fidelis Foundation was likewise centered in Minnesota. Vennes/Metro Gem and Fidelis Foundation (and its recipient charities) were all located in Minnesota. The funds Vennes/Metro Gem contributed to NCF for the benefit of Fidelis Foundation originated in Minnesota and were returned to Minnesota (to Fidelis Foundation) almost immediately as grants from NCF. Fidelis Foundation in turn granted the funds to its recipient charities primarily in Minnesota.

As with the other *Restatement* contacts, the relationships among the involved parties were all centered in Minnesota.

### 5. Other Significant Contacts Were Also with Minnesota.

The four contacts explicitly identified in *Restatement (Second) of Conflict of Laws* § 145 are not exclusive. *See* § 145(2) ("Contacts to be taken into account in applying the principles of *§ 6* to determine the law applicable to an issue include . . . .") (emphasis added). In this case, there are three additional significant contacts with Minnesota.

#### a. The Governing Law in the PBF Transactional Documents Was Minnesota Law.

The 2,100 investment transactions involving the Palm Beach Funds were documented with Promissory Notes and Security Agreements. Each of those transactional documents contained a choice of law provision designating Minnesota law as the governing law. In other words, in every one of the 2,100 investments brokered by the Debtors in this case, the Debtors and their investors agreed in advance that any disputes regarding those transactions would be governed by Minnesota law. It is therefore entirely appropriate that the Debtors' fraudulent

transfer claims against NCF (and other transferees of Vennes/Metro Gem) likewise be decided by Minnesota law.

> ### b. The Trustee Pleaded Minnesota Law in the Adversary Complaint in This Case (and in the Hundreds of Other Adversary Complaints).

As of the 2011 filing of the adversary proceedings, the Trustee evidenced by his pleading his intent and expectation to pursue all of his fraudulent transfer claims under Minnesota law. He explicitly pled his claims against NCF and the other adversary proceeding defendants "[p]ursuant to M.S.A. §§ 513.44 and 513.48," "pursuant to M.S.A. § 513.41," "[p]ursuant to M.S.A. §§ 513.45 and 513.48," and (again) "pursuant to M.S.A. § 513.41."  Complaint Count 1 (heading), ¶ 33, Count 2 (heading), and ¶ 42.[4]

> ### c. The Uniform Fraudulent Transfer Act Has Been Amended to Include a Choice of Law Provision Under Which the Debtor/Transferor's Location (in This Case, Minnesota) Determines the Governing Law.

The Uniform Fraudulent Transfer Act that is the basis for the fraudulent transfer statutes in Minnesota, Florida, and Georgia is the product of the National Conference of Commissioners on Uniform State Laws, also known as the Uniform Law Commission ("ULC").  On July 16, 2014, the ULC adopted several amendments to the UFTA (including re-naming the Act as the Uniform Voidable Transactions Act).

Significantly, one of the recent amendments adds a choice of law provision to the Uniform Act.  Under that choice of law provision, the law governing the voidability of a

---

[4]    It is true that the Trustee also pled, as a backup, the catch-all "or other applicable law." However, "other applicable law" is mentioned only in the headings of the Counts of the Complaint.  The only law cited in the body of the Counts is Minnesota law.  Complaint (Doc. 1) ¶¶ 33, 42 ("pursuant to M.S.A. § 513.41").  In addition, to this day the Trustee has never amended the Complaint to specify any applicable law other than Minnesota law.

transaction is <u>the law of the state where the debtor/transferor is located when the transfer is made</u>.

The new choice of law section states:

**SECTION 10. GOVERNING LAW.**

(a)     In this section, the following rules determine a debtor's location:

(1) A debtor who is an individual is located at the individual's principal residence.

(2) A debtor that is an organization and has only one place of business is located at its place of business.

(3) A debtor that is an organization and has more than one place of business is located at its chief executive office.

(b)     **<u>A claim in the nature of a claim under this [Act] is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred</u>**.

Doc. 68-2 (UVTA Amendment) at 12-13 (emphasis added).[5]

The Official Comment to the choice of law amendment explains the rationale for the choice of the debtor/transferor's jurisdiction:

**<u>Official Comment</u>**

1.      Section 10, added in 2014, is a simple and predictable choice of law rule for claims of the nature governed by the Act. . . . "Local" law means the substantive law of the referenced jurisdiction, and not its choice of law rules. . . .

Basing choice of law on the location of the debtor is analogous to the rule set forth in U.C.C. § 9-301 (2014), which provides that the priority of a security interest in intangible property is generally governed by the local law of the jurisdiction in which the debtor is located. The analogy is apt, because the substantive rules of this Act are a species of priority rule, in that they determine the circumstances in which a debtor's creditors, rather than the debtor's transferee, have superior rights in property transferred by the debtor.

---

[5]  The amended Uniform Voidable Transfers Act is publicly available at http://www.uniformlaws.org/shared/docs/Fraudulent%20Transfer/2014AM_AUVTA_Draft_As%20approved.pdf.  As the amended Uniform Act notes on its cover page, the "text is subject to revision by the Committee on Style" of the ULC.  By definition, however, any revisions will be purely stylistic, not substantive.

16

Doc. 68-1 (UVTA Draft) at 46.[6]

The amendment to the Uniform Act is not binding, of course, because it has not (yet) been adopted in Minnesota, but it is instructive. The UCL – a century-old organization[7] of lawyers appointed by the states to study and review the law of the states to determine which areas of law should be uniform – has determined that the debtor/transferor's location at the time of the transfer is the most significant "contact" for choice of law purposes in fraudulent transfer cases. This determination follows on the ULC's previous determination that the Uniform Commercial Code should specify the law of the debtor's location as the law governing perfection of a security interest in collateral (U.C.C. § 9-301) – a choice of law solution adopted by Minnesota and Georgia and Florida. *See* Minn. Stat. § 336.9-301(1) ("Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral"); O.C.G.A. § 11-9-301(1) (same); Fla. Stat. § 679.3011(1) (same).

Thus, at least three additional significant contacts militate in favor of the application of Minnesota law in this case: the choice of law provisions in the thousands of underlying investment transaction documents executed and relied on by the Palm Beach Funds; the Trustee's own selection of the most likely applicable law at the outset of this case; and the recent amendment to the Uniform Fraudulent Transfer Act previously adopted by Minnesota, Georgia, and Florida.

---

[6]    The draft UVTA, including the Official Comments, is publicly available at http://www.uniformlaws.org/shared/docs/Fraudulent%20Transfer/2014AM_auvta_draft.pdf.

[7]    The ULC was founded in 1892. *See* "About ULC" at http://www.uniformlaws.org.

## II.  UNDER MINNESOTA FRAUDULENT TRANSFER LAW, THE TRUSTEE'S CLAIMS ARE BARRED BY THE CHARITABLE CONTRIBUTION AMENDMENT.

The Minnesota Fraudulent Transfers Act was amended in 2012, as described shortly

thereafter by the United States District Court for the District of Minnesota:

> Apparently concerned that nonprofits, charities, religious organizations and the like would be unable to repay donations long after they had been received and spent, Minnesota's Governor signed legislation on April 3, 2012, redefining the term "transfer" under the MFTA. While claims under the statute were previously subject to a six-year statute of limitations, under the new definition a transfer "does not include a contribution of money . . . made to a qualified charitable or religious organization or entity unless the contribution was made *within two years of commencement of an action* under [the MFTA]." Minn. Stat. § 513.41(12) (emphasis added). This amendment applies to any "cause of action existing on, or arising on or after" its effective date, April 4, 2012 -- that is, the amendment was retroactively applicable. 2012 Minn. Laws 151.

*Kelley v. College of St. Benedict*, 2012 U.S. Dist. LEXIS 153802 at *5 (D. Minn. Oct. 26, 2012).

Just before the charitable contribution amendment took effect, the Trustee of the Petters

bankruptcy proceeding in Minnesota had brought the adversary proceeding against St. Benedict

College to set aside both a $2 million donation and a $1 million pledge from Petters. *Id.* at *6.

The college then moved to dismiss, "arguing that the MFTA claims were untimely, based upon

the statutory amendment above." *Id.* Significantly, Trustee Kelley did not oppose the motion to

dismiss but instead capitulated, amending his complaint to drop his fraudulent transfer claims as

to the $2 million donation. *Id.*[8]

This Court is familiar with the charitable contribution amendment to the MFTA:

> Although not explicitly labeled a statute of limitations, Minn. Stat. § 513.41(12) unmistakably limits the amount of time a plaintiff has to institute a fraudulent transfer action. Pursuant to § 513.41(12), transfers to charitable entities are only actionable if they occurred within two years prior to the

---

[8]  For a time, Trustee Kelley continued to assert fraudulent transfer claims as to the $1 million pledge, but the college's agreement that it would not attempt to enforce the pledge mooted the remaining fraudulent transfer claims. *Id.* at *20.

18

commencement of the action. Accordingly, a plaintiff must institute a cause of action seeking to recover a fraudulent transfer to a charitable entity within two years of the transfer – otherwise, he loses his cause of action. Section 513.41(12)'s two-year look-back period thus functions just like a conventional statute of limitations. Furthermore, because the two-year look-back period effectively limits the amount of time the plaintiff has to bring a cause of action, it furthers the same basic policies served by conventional statutes of limitations: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities. Because the § 513.41(12)'s two-year look-back period functions precisely like a statute of limitations and furthers the same policies as conventional statutes of limitations, the Court finds that the look-back period qualifies as "applicable nonbankrutpcy law . . . [which] fixes a period within which the debtor may commence an action" within the meaning of 11 U.S.C. § 108(a).

*CitySites Urban Media, Inc.*, Doc. 165 at 13 (March 21, 2013).

Defendant NCF is a "qualified charitable or religious organization or entity" under the charitable contribution amendment because it is an organization or entity described in 26 U.S.C. § 170(c)(2). It is a foundation organized and operated exclusively for religious and/or charitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, which is not disqualified for tax-exemption under Code Section 501(c)(3) by reason of attempting to influence legislation, and which does not participate or intervene in political campaigns. Townsend Aff. ¶ 5.

The transfers alleged in the Complaint in this case all occurred more than two years before either this adversary proceeding was commenced or the underlying bankruptcy case was commenced. The Complaint in this Adversary Proceeding was filed on November 23, 2011 (Doc. 1). The Petition in the underlying bankruptcy case was filed on November 30, 2009. *See* Case No. 09-36379-PGH Doc. 1. At the earliest, the transfers involving NCF would have to have occurred after November 30, 2007 to be potentially actionable under the charitable contribution amendment to the MFTA. As reflected in Schedule 1 to the Complaint, however,

all of the transfers involving NCF occurred a year or more earlier, in late 2005 and 2006. *See* Complaint (Doc. 1) ¶ 31 and Schedule 1.

Accordingly, the Trustee's claims against NCF under the Minnesota Fraudulent Transfer Act (Counts I and II) are barred by the charitable contribution amendment to that statute. Those claims should therefore be dismissed with prejudice.[9]

## III. UNDER MINNESOTA LAW, THE TRUSTEE'S UNJUST ENRICHMENT CLAIM SHOULD ALSO BE DISMISSED.

The Trustee's unjust enrichment claim (Count III) against NCF should be dismissed for at least two reasons.

First, under Minnesota law, unjust enrichment is an equitable claim that cannot stand where "there is an adequate legal remedy or where statutory standards for recovery are set by the legislature." *College of St. Benedict*, 2012 U.S. Dist. LEXIS 153802 at *20. As the District of Minnesota held in dismissing the Petters Trustee's unjust enrichment claim against a charitable transferee,

> The MFTA provided Kelley with an adequate legal remedy here. "In order for a legal remedy to be adequate it must be practical and efficient." Kelley nowhere argues that is untrue of the MFTA, despite bearing the burden of doing so. Moreover, it makes no difference that Kelley did not timely avail himself of the statute. Indeed, to conclude otherwise would permit Kelley to make an end-run around the recent amendments to the MFTA, which appear to have been designed to preclude precisely the types of claims brought in this case.

*Id.* at *21-23 (citations omitted). The same result follows here.

Second, under Minnesota law, the failure of the fraudulent transfer claims necessarily results in the failure of the unjust enrichment claim.

---

[9]    *See also* Florida's "borrowing statute," Fla. Stat. § 95.10 (1997) ("When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.")

> "An action for unjust enrichment may be based on failure of consideration, fraud, mistake, and situations where it would be morally wrong for one party to enrich himself at the expense of another." However, a claim of unjust enrichment does "not lie simply because one party benefits from the efforts or obligations of others, but instead lies where one party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."

*Hesselgrave v. Harrison*, 435 N.W.2d 861, 863-64 (Minn. Ct. App. 1989) (citations omitted).

Because the Trustee cannot establish that the transfers to NCF are illegal or unlawful under the MFTA, the Trustee fails to state a claim for unjust enrichment under Minnesota law. Count III of the Complaint should therefore be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, defendant NCF's motion for summary judgment should be granted and the Trustee's Complaint should be dismissed with prejudice.

Dated August 5, 2014.

Respectfully submitted,

**FISHERBROYLES, LLP**

By: _/s/ David J. Myers_
David J. Myers
GA Bar No.: 533072 (admitted *pro hac vice*)

1200 Abernathy Road
Building 600, Suite 1700
Atlanta, Georgia 30328
404-825-3907 (o)
770-551-8105 (f)
dmyers@fisherbroyles.com

**SHRAIBERG, FERRARA & LANDAU, P.A.**

Bradley S. Shraiberg, Esq.
Florida Bar No. 121622

2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

bshraiberg@sfl-pa.com

Attorneys for National Christian Charitable
Foundation, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing to those parties registered to receive electronic filings on this the 5th

day of August, 2014.

By: _/s/ David J. Myers_
David J. Myers

EXHIBIT 2

- *Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1270 (S.D. Fla. 2007) (weighing the Florida-located "negligence, breach of fiduciary duty, and illegal conduct" more heavily against the situs of the injury, and the counterplaintiff's domicile, California)

- *Miller v. Thrifty Rent-a-Car System, Inc.*, 609 F. Supp. 2d 1235 (M.D. Fla. 2009) (applying Oklahoma law, the domiciliary of the defendant, to a suit based on a car accident in South Africa brought by a Florida resident on behalf of a decedent Ohio resident)

- *Walker v. Paradise Grand Hotel, Ltd.*, 2003 WL 21361662, 2003 U.S. Dist. LEXIS 25660 (S.D. Fla. Apr. 25, 2003) (applying the law of the Florida, the state with which the Bahamian defendant had significant contacts, in a suit by a North Carolina resident filed on behalf of a Maryland-domiciled decedent in an action arising out of a hotel accident in the Bahamas in which no party sought application of Bahamian law)

- *Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1300 (11th Cir. 1999) (holding that Florida law applied as to liability in a wrongful death action arising from a crash in Colombia against American Airlines, due to its substantial Miami-based Latin America operations, despite its Delaware domiciliary, but holding that Florida had no interest in the application of a loss distribution rule due to the lack of a Florida domiciled plaintiff and holding that Florida had an interest in protecting a Florida domiciled defendant from excessive damages)

- *MC Asset Recovery, LLC v. Commerzbank A.G. (In re Mirant)*, 675 F.3d 530 (5th Cir. 2012) (applying New York law to UFTA claim brought by a Texas Plaintiff against European banks on the basis of transactions that occurred in New York through the bank's New York counsel and hesitating to apply Georgia's divergent rule not treating guarantees as transfers as antithetic to "harmonious relations between states" under §6 of the Restatement)

- *ASARCO, LLC v. Americas Mining Corp.*, 382 B.R. 49 (S.D. Tex. 2007) (applying Delaware law to case which had contacts in Arizona, Delaware and Peru because "both the Defendant and one of the Plaintiffs, SPH, were incorporated in Delaware during the conduct that gave rise to this case")

- *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 88 (1994) (addressing the scope of preemption and whether California or Federal law governed imputation of knowledge when a federally chartered organization brings suit)

- *Foster v. United States*, 768 F.2d 1278 (11th Cir. 1985) (holding that "a limit on recovery [not unlike the Minnesota's Charitable Contribution Exception] should not be applied when there is no domiciliary defendant because it advances no policy behind the limitation," and applying Illinois law to an aircraft crash allegedly caused by air traffic controllers in Illinois)

- *Taylor v. Community Bankers Securities, LLC*, 2013 WL 3166336, 2013 U.S. Dist. LEXIS 86485 (S.D. Tex. June 20, 2013)(holding that fraudulent transfer law primarily benefits aggrieved creditors, and thus applying Texas law, where Texas domiciled plaintiff/receiver sued Virginia entity under fraudulent transfer theory)

EXHIBIT 2

- *Harding v. Proko Inds., Inc.*, 765 F. Supp. 1053 (D. Kan. 1991) (applying Texas law to asbestos claim where decedent was exposed to asbestos in Texas but later moved to Kansas and discovered injuries in Kansas);

- *Francis v. Starwood Hotels & Resorts Worldwide, Inc*., 2011 WL 3351320, 2011 U.S. Dist. LEXIS 85215 (D. Colo. Aug. 3, 2011) (applying Maryland law to Maryland defendant in veil piercing action due to expectation that entity's corporate conduct be governed by the laws of its state of incorporation)

- *MC Asset Recovery LLC v. Commerzbank AG (In re Mirant Corp.)*, 2010 WL 8708772, 2010 Bankr. LEXIS 6389 *53-55 (Bankr. N.D. Tex. Apr. 22, 2010) (Applying New York law in a fraudulent transfer case because, despite Georgia's slightly more significant contacts, as New York law [like Florida or Georgia law in this case] better promoted the protection of *creditors*, rather than defendants, because creditor protection is the overarching goal of fraudulent transfer laws)

- *Silica Tech, L.L.C. v. J-Fiber GmbH*, 2009 WL 2579432, 2009 U.S. Dist. LEXIS 73700 (D. Mass. May 19, 2009) (applying Massachusetts law to a fraudulent conveyance claim litigated by successors in interest from Connecticut and Germany, where transferor made fraudulent transfer to transferee domiciled in Massachusetts)

- *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 198 B.R. 352, 362 (Bankr. D. Colo. 1996) (Applying Texas law to a fraudulent transfer brought by creditor trust for chapter 11 debtor where most of the affected creditors were in Texas, most of the actions preceding the transfer were in Texas, and most of the transferee beneficiaries were in Texas).

- *In re Consol. Capital Equities Corp.*, 143 B.R. 80, 85 (Bankr. N.D. Tex. 1992) (Applying California law in fraudulent transfer case brought on behalf of California-domiciled plaintiff/transferor against New York corporation)

- *Murphy v. Meritor Sav. Bank (In re O'Day Corp.)*, 126 B.R. 370, 391 (Bankr. D. Mass. 1991) (Applying Massachusetts law to a claim brought by a chapter 7 trustee of a Massachusetts corporation to set aside grants of security interests on property located in Massachusetts).

- *Ferrari v. Barclays Bus. Credit, Inc. (In re Morse Tool, Inc.)*, 108 B.R. 384, 387 (Bankr. D. Mass. 1989) (Applying Massachusetts law to a fraudulent transfer action brought by a Massachusetts chapter 7 trustee on behalf of a Massachusetts corporation for a transfer of assets located in Massachusetts by the corporation to the defendant, a Connecticut corporation).

**09-36379-PGH** Palm Beach Finance Partners, L.P.
**Case type:** bk **Chapter:** 11 **Asset:** Yes **Vol:** v **Judge:** Paul G. Hyman, Jr.
**Date filed:** 11/30/2009 **Date of last filing:** 04/17/2015 **Plan confirmed:** 10/21/2010

# Associated Cases

| Case | Associated Case | Type |
|---|---|---|
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 09-02530-PGH Palm Beach Finance Partners, L.P. et al v. US Bank, NA et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 09-02553-PGH Palm Beach Finance Partners I, LP et al v. Kaufman, Rossin & Co. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 09-36396-PGH Palm Beach Finance II, L.P. | Jointly Administered |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-01780-PGH Barry E. Mukamal, Trustee v. The Father's Heart Family Foundation Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-01820-PGH Mukamal v. Palm Beach Capital Management, L.P. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-01824-PGH Barry E. Mukamal v. Prevost (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02802-PGH Mukamal v. V.A.S. Partners, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02803-PGH Mukamal v. Allegra (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02804-PGH Mukamal v. The Ransom Performance Fund, L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02805-PGH Mukamal v. The Bescher Family Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02806-PGH Mukamal v. Ontario Partners, L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02807-PGH Mukamal v. Barnett et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02809-PGH Mukamal v. Pugliese (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02810-PGH Mukamal v. Reich (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02812-PGH Mukamal v. Diversified Investment Pool, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02815-PGH Mukamal v. The BFI HiLo Fund, L.L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02818-PGH Mukamal v. Rosenblum et al (closed) | Adversary |
| 09-36379-PGH Palm Beach | 11-02819-PGH Mukamal v. Barbara S. Bluhm Revocable | Adversary |

| | | |
|---|---|---|
| | Trust et al (closed) | |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02820-PGH Mukamal v. Alpha Evolving Manager Fund, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02821-PGH Mukamal v. Ontario Partners II, L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02822-PGH Mukamal v. ABN AMRO Fund Services Bank (Cayman) Limited f/k/a (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02823-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02824-PGH Mukamal v. Palm Beach Diversified Income, LP (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02825-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02827-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02829-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02830-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02833-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02836-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02852-PGH Mukamal v. Nucleus Fund Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02853-PGH Mukamal v. Bluefin Multi Strategy Fund Spc (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02854-PGH Mukamal v. Edison Fund Limited (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02855-PGH Mukamal v. Chase Auto Finance Corp. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02856-PGH Mukamal v. Fradenburg (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02857-PGH Mukamal v. Nationwide International Resources, Inc. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02858-PGH Mukamal v. Agile Performance Fund LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02860-PGH Mukamal v. ABN AMRO Fund Services Bank (Cayman) Limited et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02861-PGH Mukamal v. The Mosaic Fund, L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02862-PGH Mukamal v. W Charitable Foundation, Inc. (closed) | Adversary |

| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02863-PGH Mukamal v. Karasel, L.P. (closed) | Adversary |
|---|---|---|
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02864-PGH Mukamal v. Walchek Integrity L.P. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02865-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02866-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02867-PGH Mukamal v. Palm Beach Diversified Income, LP (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02868-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02869-PGH Mukamal v. Edison Fund Limited et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02870-PGH Mukamal v. Fairfax Fund Limited (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02871-PGH Mukamal v. Essex Fund Limited (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02872-PGH Mukamal v. Shakti Fund Limited (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02873-PGH Mukamal v. Nucleus Fund Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02874-PGH Mukamal v. Bluefin Multi Strategy Fund Spc (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02876-PGH Mukamal v. Newman Family Revocable Trust Dated December 11, 1 (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02878-PGH Mukamal v. Bought With A Price Ministries International (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02879-PGH Mukamal v. Karasel, L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02880-PGH Mukamal v. The Walchek Family Revocable Trust dated November (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02886-PGH Mukamal v. Atradius Trade Credit Insurance, Inc. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02930-PGH Mukamal v. Ford Motor Credit Company LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02931-PGH Mukamal v. JH Ranch International et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02932-PGH Mukamal v. Boca Raton Christian School, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02933-PGH Mukamal v. United Ministries International (closed) | Adversary |
| 09-36379-PGH Palm Beach | 11-02935-PGH Mukamal v. First Baptist Church of | Adversary |

| | | |
|---|---|---|
| | Tequesta, Inc. (closed) | |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02936-PGH Mukamal v. Make Old Things New, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02937-PGH Mukamal v. His Voice Ministries, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02938-PGH Mukamal v. West Lakes Assembly of God (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02939-PGH Mukamal v. Father's Heart - A Ranch for Children, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02940-PGH Mukamal v. The National Christian Foundation, Inc. | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02941-PGH Mukamal v. Minnesota Military Family Foundation (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02942-PGH Mukamal v. David W. Hagen d/b/a Bread of Life Pentecostal Chu (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02943-PGH Mukamal v. The Navigators (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02944-PGH Mukamal v. Southwest Key Programs, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02945-PGH Mukamal v. Beacon Partners, Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02946-PGH Mukamal v. The Caridad Corporation (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02947-PGH Mukamal v. Vennes (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02948-PGH Mukamal v. Vennes (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02949-PGH Mukamal v. Grace Consulting of Southeast, Inc. | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02950-PGH Mukamal v. Grace Offerings, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02951-PGH Mukamal v. Greater Resource Development, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02952-PGH Mukamal v. Sunny Day Security Systems, Inc. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02953-PGH Mukamal v. Phil 419, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02954-PGH Mukamal v. SWCHS Partners, LLC (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02955-PGH Mukamal v. Winner's Edge Holding Company (closed) | Adversary |
| 09-36379-PGH Palm Beach | 11-02956-PGH Mukamal v. Build Partners, LLC (closed) | Adversary |

| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02957-PGH Mukamal v. Morgan Street Partners LLC (closed) | Adversary |
|---|---|---|
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02958-PGH Mukamal v. Rodman Capital Holdings, Ltd. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02959-PGH Mukamal v. Unseth (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02960-PGH Mukamal v. Dalchow (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02961-PGH Mukamal v. Fitzgerald (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02962-PGH Mukamal v. Wipf (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02963-PGH Mukamal v. The Greater Minneapolis Daycare Association (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02964-PGH Mukamal v. Bierle (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02965-PGH Mukamal v. Naegele, III (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02966-PGH Mukamal v. Plaza I, Inc. | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02967-PGH Mukamal v. Vennes | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02968-PGH Mukamal v. Vennes | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02969-PGH Mukamal v. Griffing (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02970-PGH Mukamal v. Cosmos, Inc. | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02971-PGH Mukamal v. Parker (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02972-PGH Mukamal v. Sterling Management Group, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02973-PGH Mukamal v. Murphy (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02974-PGH Mukamal v. Dirks (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02975-PGH Mukamal v. Hendricks (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02976-PGH Mukamal v. Roethle et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02977-PGH Mukamal v. Garden Community Development Corporation (closed) | Adversary |

| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02978-PGH Mukamal v. Starr (closed) | Adversary |
|---|---|---|
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02979-PGH Mukamal v. Dunker (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02980-PGH Mukamal v. Anguish (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02981-PGH Mukamal v. Berscheid (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02982-PGH Mukamal v. Shea (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02983-PGH Mukamal v. Sleck (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02984-PGH Mukamal v. Becker (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02985-PGH Mukamal v. Webster (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02986-PGH Mukamal v. Bird (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02987-PGH Mukamal v. Mansour | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02988-PGH Mukamal v. Parenteau (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02989-PGH Mukamal v. Bowman (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02990-PGH Mukamal v. Schneider | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02991-PGH Mukamal v. Mansour | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02992-PGH Mukamal v. Wolbert (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02993-PGH Mukamal v. The Thomas P. Lowe Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02994-PGH Mukamal v. Wolbert (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02995-PGH Mukamal v. The Ashton Revocable Living Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02996-PGH Mukamal v. Mansour | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02997-PGH Mukamal v. The Marlyn Wolbert Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-02998-PGH Mukamal v. The Marlys Wolbert Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach | | |

| | | |
|---|---|---|
| Finance Partners, L.P. | 11-02999-PGH Mukamal v. Davenport (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03000-PGH Mukamal v. Bergman (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03001-PGH Mukamal v. Stedman (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03002-PGH Mukamal v. Davenport, Jr. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03003-PGH Mukamal v. Pekula (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03004-PGH Mukamal v. Allex (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03005-PGH Mukamal v. Glint (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03006-PGH Mukamal v. Lind (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03007-PGH Mukamal v. Johnson (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03008-PGH Mukamal v. Rasmussen (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03009-PGH Mukamal v. Roelofs (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03010-PGH Mukamal v. TLB-A, CRUT et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03015-PGH Mukamal v. BMO Harris Bank N.A. as Successor by Merger to M&I | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03019-PGH Mukamal v. Dakota Partners, LP et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03022-PGH Mukamal v. CitySites Urban Media, Inc. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03023-PGH Mukamal v. Silker | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03025-PGH Mukamal v. KBC Financial Products (Cayman Islands) Ltd. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03026-PGH Mukamal v. Greely (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03027-PGH Mukamal v. Sleck (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03028-PGH Mukamal v. Amiot (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03029-PGH Mukamal v. Bachmann et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03030-PGH Mukamal v. Fidelis Foundation (closed) | Adversary |

| | | |
|---|---|---|
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03032-PGH Mukamal v. Marian Dunlap Revocable Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03037-PGH Mukamal v. The Brink Revocable Living Trust et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03038-PGH Mukamal v. Walchek (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03039-PGH Mukamal v. Forrestal Portfolios LLC et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 11-03041-PGH Mukamal v. Metro Gem, Inc. et al | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01261-PGH Mukamal v. The Thomas J. Petters Family Foundation | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01262-PGH Mukamal v. The John T. Petters Foundation (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01263-PGH Mukamal v. North Central University (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01264-PGH Mukamal v. Church on the Green (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01265-PGH Mukamal v. Bethany Fellowship, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01266-PGH Mukamal v. Southwest Christian High School, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01267-PGH Mukamal v. Redeemer Bible Church (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01847-PGH Mukamal v. Rogers, Jr. et al (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01942-PGH Mukamal v. Petters et al | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-01979-PGH Mukamal v. General Electric Capital Corporation | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 12-02123-PGH Mukamal v. Fulbright & Jaworski L.L.P. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01660-PGH Barry E. Mukamal v. BMO Harris Bank N.A. as Successor by Merger to M&I | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01668-PGH Mukamal v. Vlahos | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01669-PGH Mukamal v. Nelson (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01670-PGH Mukamal v. Edgebrook, Inc. (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01671-PGH Barry E. Mukamal v. DaVinci Capital Partners, LP | Adversary |
| 09-36379-PGH Palm Beach | 14-01672-PGH Barry E. Mukamal v. DaVinci Offshore | |

| Finance Partners, L.P. | Fund, LP | Adversary |
|---|---|---|
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01673-PGH Barry E. Mukamal v. Taunton | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01674-PGH Barry E. Mukamal v. Taunton (closed) | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01676-PGH Barry E. Mukamal v. Wodarck | Adversary |
| 09-36379-PGH Palm Beach Finance Partners, L.P. | 14-01677-PGH Barry E. Mukamal v. Howse (closed) | Adversary |

# Other Filings by Same Debtor(s)

## There Are No Case Filing Associations For This Case

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/20/2015 14:56:43 | | |
| **PACER Login:** | mr0087:2601644:0 | **Client Code:** | 4189-1 |
| **Description:** | Associated Cases | **Search Criteria:** | 09-36379-PGH |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                              Case No. 09-36379-PGH
                                                    Chapter 11
Palm Beach Finance Partners, L.P. and
Palm Beach Finance II, L.P.,

          Debtor(s).
_____/

Barry E. Mukamal, as Liquidating Trustee,

          Plaintiff,

                                                    Adversary Pro. No. 11-02940-PGH
v.

The National Christian Foundation, Inc.,

          Defendant.
_____/

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant, National Christian Charitable Foundation, Inc. ("NCF"),[1] by and through its undersigned counsel, hereby submits its Answer and Affirmative Defenses to the Adversary Proceeding Complaint of plaintiff, Barry E. Mukamal, duly appointed and acting Liquidating Trustee (the "**Plaintiff**" or "**Trustee**") of the debtors, Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. (the "**Debtors**").

### AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     This Court lacks subject matter jurisdiction of this case.  The Trustee's claims

---

[1]     The Adversary Proceeding Complaint erroneously identifies defendant as The National Christian Foundation, Inc.  The proper name of defendant is National Christian Charitable Foundation, Inc.

EXHIBIT 4

against NCF are essentially common law claims attempting to augment the estate, do not stem from the bankruptcy itself and would not be resolved in the claims allowance process. *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). The Trustee's claims are a private right that must be adjudicated by an Article III court or a state court. This Court's jurisdiction over this claim is therefore unconstitutional.

3.      This Court does not have personal jurisdiction over NCF, a Georgia non-profit corporation.

4.      Venue is not proper in this Court; NCF does not reside in this district nor did a substantial part of the events or omissions giving rise to the claim occur in this district.

5.      Plaintiff's Complaint fails to meet the pleading standards of Fed. R. Civ. P. 8(a) in that it relies on conclusory allegations devoid of any factual enhancement regarding when the Palm Beach Funds became creditors of MGI and is not sufficiently detailed as to how the claims arose.

6.      Plaintiff's claims are barred by the applicable statute of limitations. For example, the Trustee's claims are brought exclusively as a state law claim and not under his "strong-arm" powers of § 544 of the Bankruptcy Code. Therefore, the Trustee does not get the benefit of the 2-year period of § 546 of the Bankruptcy Code and the statute of limitations began to run as of the date of the transfer.

7.      The funds transferred to NCF were held in trust for another (Fidelis Foundation) and NCF received no benefit from receipt of the funds transferred or any control of the disposition of said funds.

8.      Plaintiff's claims are barred by the doctrine of *in pari delicto*. To the extent the Debtors participated in the wrongdoing alleged by them against the Vennes Parties or the

wrongdoing alleged by them against the Petters entities, the Trustee cannot recover damages as a result of any such wrongdoing.

9.     Plaintiff's claims are barred by the doctrine of unclean hands. To the extent the Debtors participated in the wrongdoing alleged by them against the Vennes Parties or the wrongdoing alleged by them against the Petters entities, the Trustee cannot recover damages as a result of any such wrongdoing.

10.    Plaintiff's claims are barred because the Palm Beach Funds are creditors of the Petters entities, not of the Vennes Parties.

11.    Plaintiff's claims are barred because they result in a multiple recovery. The Trustee is seeking recovery against the Petters entities, the alleged transferors (Vennes and/or MGI), the alleged transferee (NCF), the alleged subsequent transferee (Fidelis Foundation), and the ultimate transferees (multiple charities who received transfers from Fidelis Foundation).

12.    NCF merely served as a conduit for the funds at issue in this case from Vennes and/or MGI to Fidelis Foundation.

13.    To the extent NCF is determined to be a transferee, NCF was a subsequent transferee of a good faith transferee who gave value to the Debtor.

14.    The transferor(s) did in fact receive consideration for the transfers at issue in this case.

15.    The transferor(s) was/were not insolvent at the time of the transfers at issue in this case.

16.    Plaintiff's Complaint violates the automatic stay in *United States v. Petters*, No. 08-cv-05348-ADM-JSM (D. Minn.), which stays all claims against or through the defendants in that case, including Vennes or MGI. This action is only actionable through Vennes or MGI.

Without an order lifting that stay or providing relief for that stay, the Trustee has no authority or standing to bring this case, and is in violation of that stay order.

17.     Fidelis Foundation was an alter ego of Vennes and/or MGI.  Vennes and/or MGI merely used NCF to transfer the funds from one alter ego to another.  As a result, there were no transfers to NCF as a matter of law.

18.     Plaintiff's claims are barred by the Religious Liberty Charitable Donation Protection Act.  11 U.S.C. §§ 544, 548(a)(2).

19.     Plaintiff has failed to join an indispensable party in this litigation:  Gary Hansen, the Receiver for MGI.  The Court cannot afford complete relief between the Trustee and NCF without Gary Hansen's presence in this case.  NCF also bears a substantial risk of double, multiple, or inconsistent liability without Gary Hansen being named in this lawsuit. This action without Gary Hansen as a party impairs his ability to protect his interests.

20.     Plaintiff lacks standing to bring these claims against NCF.  These claims belong to the MGI receiver, Gary Hansen, and are property of the receivership action pending in Minnesota because these claims are assets of that receivership that must be recovered in that case.

21.     The Debtors were contributorily negligent in relation to any claim of negligence by the Debtors against the Vennes Parties.

22.     The Debtors assumed the risk of their investments in the Petters entities and were responsible to perform due diligence before making said investments, unlike NCF, which merely accepted charitable contributions with typical directions to transfer those charitable contributions to another qualified charity (Fidelis Foundation).

## <u>ANSWER</u>

### PARTIES, JURISDICTION, AND VENUE[2]

1.      Admitted, on information and belief.

2.      Admitted, on information and belief, except that as to the purpose for which the Palm Beach Funds were formed NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

3.      Admitted, on information and belief.

4.      Admitted, on information and belief.

5.      Admitted, on information and belief.

6.      Admitted, on information and belief.

7.      Admitted.

8.      Denied.

9.      Denied.

### ALLEGATIONS

### I.    The Petters Investment

#### A.    General Description of the Investment

10.      NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

11.      NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

---

[2]    For clarity, NCF will repeat in this Answer the headings used by plaintiff in the Complaint but does not thereby admit any allegation or concede any characterization contained therein.

12.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

13.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

14.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

15.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

16.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

**B.      The Palm Beach Funds' Investment in Petters**

17.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

18.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

19.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

20.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

**II.     The Petters Fraud**

21.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

22.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

23.     NCF lacks knowledge or information sufficient to form a belief about the truth of the allegation(s).

24.     Admitted, on information and belief.

25.     Admitted, on information and belief.

26.     Admitted, on information and belief.

27.     Admitted, on information and belief.

**III.     The Vennes Parties' Action and Transfers to the Defendant**

28.     Admitted.

29.     Denied because the Vennes Action speaks for itself.

30.     Denied.

31.     Denied, except admitted that MGI and/or Vennes made transfers to NCF in the amounts and on or about the dates shown on Schedule 1.

**Count 1 – Fraudulent Transfer Pursuant to M.S.A. §§ 513.44 and 513.48 or Other Applicable Law**

32.     NCF reasserts the responses set forth in ¶¶ 1-31 as if fully set forth herein.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

7

40.     Denied.

## Count 2 – Fraudulent Transfer Pursuant to M.S.A. §§ 513.45 and 513.48 or Other Applicable Law

41.     NCF reasserts the responses set forth in ¶¶ 1-31 as if fully set forth herein.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

## Count 3 – Unjust Enrichment

46.     NCF reasserts the responses set forth in ¶¶ 1-31 as if fully set forth herein.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

## PRAYER FOR RELIEF

WHEREFORE, NCF respectfully requests that this Court:

(a)     Enter judgment against plaintiff and for NCF;

(b)     Dismiss plaintiff's Complaint;

(c)     Award NCF's reasonable attorneys' fees and costs to the extent allowed under applicable law or statute; and

(d)     Grant such further relief as this Court deems just and proper.

Dated April 12, 2013.

8

Respectfully submitted,

**FISHERBROYLES, LLP**

By: _/s/ David J. Myers_
David J. Myers
GA Bar No.:  533072 (admitted *pro hac vice*)

1200 Abernathy Road
Building 600, Suite 1700
Atlanta, Georgia 30328
404-825-3907 (o)
770-551-8105 (f)
myers@fsblegal.com

**SHRAIBERG, FERRARA & LANDAU, P.A.**

Bradley S. Shraiberg, Esq.
Florida Bar No. 121622

2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bshraiberg@sfl-pa.com

Attorneys for National Christian Charitable
Foundation, Inc.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing to those parties registered to receive electronic filings on this the 12th

day of April, 2013.

By: _/s/ David J. Myers_____
　　　David J. Myers